Argued and submitted April 21, 2017, affirmed March 11, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN DOUGLAS ROCKETT,
*Defendant-Appellant.*

Washington County Circuit Court
C131929CR, C132673CR;
A160031 (Control), A160080

463 P3d 1

In a consolidated appeal, defendant appeals a judgment of conviction for 13 sexual offenses committed against victims A, B, and C. Among the issues that he raises on appeal, he contends that the trial court erroneously admitted other-acts evidence against him and erred in awarding compensatory fines in favor of A, B, and C. *Held*: The trial court did not err in concluding that the other-acts evidence was admissible under OEC 404(3). Further, the balancing that the trial court undertook under OEC 403 to determine whether the probative value of the other-acts evidence was substantially outweighed by the risk of unfair prejudice to defendant was appropriate, and the trial court did not abuse its discretion in admitting that evidence. Defendant failed to object at trial to the trial court's findings that A, B, and C had suffered economic damages as a result of defendant's criminal conduct and were victims eligible to recover damages from defendant in a civil action. In light of those findings, the trial court did not err in awarding compensatory fines in the amounts that it awarded to each victim.

Affirmed.

Andrew Erwin, Judge.

Lindsey Burrows, Deputy Public Defender, argued the cause and filed the supplemental brief for appellant. Also on the opening brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Erin K. Olson and Law Office of Erin Olson, P. C., filed the brief *amicus curiae* for Victims.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.*

ARMSTRONG, P. J.

Affirmed.

_____

* Tookey, J., *vice* Wollheim, S. J.

**ARMSTRONG, P. J.**

In a consolidated appeal, defendant appeals a judgment of conviction for 13 sexual offenses committed against A, B, and C.[1] In nine assignments of error, defendant contends that the trial court erroneously admitted uncharged misconduct evidence about defendant's Facebook communications and hidden-camera evidence, erroneously excluded impeachment evidence, and improperly imposed compensatory fines. Defendant argues that the trial court's incorrect evidentiary rulings entitle him to reversal of his convictions and a new trial. Alternatively, defendant contends that, if we uphold the convictions, we must remand for resentencing because of errors in imposing the compensatory fines.

The state responds that all of defendant's arguments are either unpreserved or present no basis for reversal. We write to address defendant's assignments of error related to the admission of Facebook communications and three categories of hidden-camera evidence and the imposition of compensatory fines, and we reject the remaining assignments of error without discussion.[2] We conclude that all three categories of the hidden-camera evidence and the Facebook communications with A were admissible under OEC 404(3). Further, the trial court's balancing under OEC 403 to determine the admissibility of that evidence was appropriate, and the court did not abuse its discretion in

---

[1] This is a consolidated appeal involving five different victims in two different cases that were joined below: In A160031 (Case No. C131929CR) defendant was convicted after jury trial of 13 sexual offenses committed against A, B, and C. In A160080 (Case No. 132673CR), defendant pleaded guilty to one count of attempt to use a child in a display of sexually explicit conduct, ORS 163.670, and two counts of invasion of personal privacy, ORS 163.700. On appeal, defendant assigns error only to rulings in Case No. C131929CR; he has not assigned error to any ruling in Case No. C132673CR. The judgment in the latter case is, therefore, affirmed.

[2] In his tenth through twelfth assignments of error, raised in a supplemental brief, defendant makes unpreserved arguments that the trial court erred when it instructed the jury in Case No. C131929CR that it could convict defendant by nonunanimous verdict and when it accepted nonunanimous verdicts on Counts 6, 8, 9, and 14. Defendant contends that the Sixth and Fourteenth Amendments to the United States Constitution require unanimous jury verdicts to convict him on the charges in this case. We reject those assignments of error on the merits without further discussion. *See State v. Gerig*, 297 Or App 884, 886 n 2, 444 P3d 1145 (2019) (taking that approach).

admitting that evidence. Also, we conclude that defendant failed to object to the trial court's findings that A, B, and C had suffered economic damages and were victims eligible to recover damages in a civil action against him for purposes of an award of a compensatory fine under ORS 137.101. Hence, we reject defendant's challenge to the compensatory fines in the amounts that the court awarded to each of the victims. Accordingly, we affirm.

## I.   BACKGROUND FACTS AND PROCEDURE

The following facts are procedural or undisputed. The state charged defendant with multiple sexual offenses committed against three sisters, A, B, and C, all of whom were under the age of 14 at the time of the alleged acts. All of the charges stemmed from conduct alleged to have occurred between 2003 and 2013. During that period, the girls spent considerable time with defendant, who was a family friend. Over the years, defendant offered various types of support to Joseph and Cheryl, the father and mother of the girls. When the parents needed extra help, the girls would sometimes live with defendant for periods ranging from weekends to several months.

In August 2013, Cheryl was struggling with many of A's behaviors. Because of that, Cheryl told A that she was going to call defendant and ask him if A could live with him again. A said that, if her mother did that, A would run away. When Cheryl asked why, A told her that "[defendant] fucking raped me." A told Cheryl that she had proof and showed Cheryl Facebook messages from June 2013, when defendant asked A to take and send photographs of herself to him. B was in the room during that conversation, and she started crying and said that defendant had touched her when she was at his house. Cheryl responded by placing a call to C to ask her whether defendant had "ever touched [her] or done anything to [her]." C said that he had.

Cheryl called the police, and Detective Cox was assigned as lead investigator in the case. Cox interviewed A and B in August 2013. A and B were thereafter referred to CARES, a medical program that assesses children to determine whether they have been abused. Among other things, A reported in her interview with CARES that defendant had

asked her through Facebook messages to send him "naked photos" of herself.

Both A and B disclosed in their interviews with Cox and CARES that they had been subjected to sexual abuse by defendant. During the investigation, Cox and another detective interviewed defendant about the girls' allegations. In the interview, the detectives confronted defendant with his Facebook messages with A in which defendant had told A to send him "nice quality pictures that show how you have changed since the last pictures I have of you" and that "they better be good quality and no shy." When A responded that she did not have a mirror, defendant told her to "use the one in the bathroom just stand back and hold the camera higher up and point it downwards to get the full picture." Defendant messaged A that he had to get back to work, and that "now would be a good time for you to go take a shower and take the pictures while you are in there so you get them done and out of the way." A responded that she took one this morning and "thought it could have clothes on," and defendant wrote back, "I will make you a deal just one without and all the others with as long as you get a good picture and not have to show your face." A had lost her iPhone, and defendant messaged her that, "if you are going to have to work for a replacement phone can [*sic*] only do it on Tuesday or Wednesday, only times I have to take off from work." A responded that "I'll just go without one. I don't want to do that stuff again. I have nightmares cuz of it and I cry myself to sleep a lot since then."

Defendant told the detectives that he had asked A in his Facebook messages for photographs of her because he wanted to see how much she had grown since he had seen her in person. He also claimed that he did not mean for A to take the photographs in the shower but that she should take a shower. He also claimed that he did not remember the Facebook conversation and had been drinking alcoholic "slushies" at that time.

During the investigation, police discovered several devices in defendant's home that contained hidden cameras, including a clock with a camera and a hidden camera in an upstairs bathroom. The bathroom camera captured images

of the large bathroom mirror and vanity area, and it was connected to a digital recording device in defendant's master bedroom. Detective Rookhuyzen viewed images captured on the camera, and he believed that the camera was positioned to capture images of people entering and leaving the shower. The police department spent considerable time attempting to identify the children whose images were on the camera because they were potential victims of defendant's use of it. The time it took to identify the potential victims prevented police officers from identifying other witnesses to whom A and B had disclosed their abuse. When Detective Cox left the Washington County Sheriff's Office in August 2014, not all of the potential victims from defendant's use of the hidden bathroom camera had been identified.

Based on evidence gathered regarding defendant's alleged acts of sexual abuse toward A, B, and C, the state charged defendant with the following crimes: one count of first-degree unlawful sexual penetration (Count 1), ORS 163.411; six counts of first-degree sexual abuse (Counts 2-3, 5-6, and 13-14), ORS 163.427; three counts of using a child in a display of sexually explicit conduct (Counts 4 and 11-12), ORS 163.670; two counts of second-degree sodomy (Counts 7-8), ORS 163.395; and two counts of second-degree rape (Counts 9-10), ORS 163.365.

The evidence discovered during the investigation also led to charges in two other cases involving exploitation and sexual abuse of minors. Those cases were joined with the case involving A, B, and C. Defendant moved to sever the three cases for trial. The trial court denied defendant's motion, and the court ruled that all the evidence in each case would be admissible in all three cases.

A.  *Pretrial Hearing on Defendant's Motion* in Limine

Before trial, defendant filed a motion *in limine* that sought to exclude 11 categories of "uncharged conduct and/or prior bad act" evidence, which included Facebook communications by defendant with A and with people in the Philippines; evidence from defendant's computer and emails; child pornography; and hidden-camera evidence. Defendant's motion *in limine* asserted that, under the

proper application of OEC 404(3),[3] OEC 404(4),[4] and OEC 403,[5] the trial court should exclude all 11 categories of evidence. Defendant made the following arguments: (1) none of the evidence met the test for "doctrine of chances" evidence to prove intent, as set forth in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986); (2) none of the evidence was admissible to prove motive; (3) the evidence would be offered only "to demonstrate that defendant is a bad man and has a propensity to commit the charged act"; and (4) even if the evidence were admissible as an "exception[] to the general rules against character evidence," it would be unfairly prejudicial because it would have "undue emotional impact on the jury," would likely "confuse and mislead the jury," and "could inflame the jury and cause the jury to render an improper decision."

The pretrial hearing on defendant's motion took place over two days. During the first day, the state sought to admit Facebook communications that defendant had had with people in the Philippines and emails and photographs from defendant's computer because they contained evidence of defendant's sexual conduct with children in the Philippines and of defendant's possession of child pornography. The state argued that the evidence was "relevant and probative that the defendant has a sexual interest in children and [was] sexually exploiting children for his own sexual gratification." Specifically, the state argued that the evidence was relevant to show motive, purpose, plan,

---

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[4] OEC 404(4) provides, in part:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403.]"

[5] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

and preparation under OEC 404(3). Alternatively, the state argued that other-acts evidence was admissible in criminal cases if relevant, and, thus, that the evidence was admissible under OEC 404(4). The state acknowledged that the court would have to conduct OEC 403 balancing and might need to give cautionary instructions, but it contended that the evidence was nonetheless admissible. Defendant responded that the evidence was inadmissible for any purpose under OEC 404(3) or OEC 404(4) because it was unrelated to any charged acts and served only to prove that defendant was a "bad man" and a pedophile.

The court noted that defendant had denied that any conduct had occurred that would provide the basis for the charges. Because defendant was not claiming mistake or inadvertence, the court concluded that the other-acts evidence was not relevant under *Johns* to prove defendant's intent. Further, the court concluded that the other-acts evidence that was unrelated to the victims of the charged crimes was inadmissible propensity evidence and not probative of motive, purpose, plan, or preparation. The state responded to the court's tentative ruling by submitting additional cases for the court's review, and the court reserved ruling to the next day.

Upon reconvening the next day, the court rejected the state's arguments for admissibility under OEC 404(3) and OEC 404(4) because the court considered most of the other-acts evidence to have no probative value other than to prove propensity—absent the state establishing a connection to the charges in the case or defendant opening the door to the admission of the excluded evidence at trial by challenging the import of proven conduct. Thus, the trial court ruled inadmissible the other-acts evidence of Facebook communications with people in the Philippines and the child pornography. However, the court ruled that the other-acts evidence comprised of Facebook communications with A was relevant and admissible to show defendant's sexual predisposition toward A.

After those rulings, defendant entered a guilty plea to the charges in one of the joined cases. Based on defendant's conduct related to the hidden camera found in his bathroom,

defendant pleaded guilty to one count of attempt to use a child in a display of sexually explicit conduct, ORS 163.670, and two counts of invasion of personal privacy, ORS 163.700. Subsequently, the court ruled that the hidden-camera evidence was no longer directly relevant to the remaining charged offenses. Thus, unless defendant "opened the door," the hidden-camera evidence would not be admissible. The court ultimately granted defendant's pretrial motion to exclude all the other-acts evidence except defendant's Facebook communications with A.

B.  *State's Case-in-Chief: Trial Court Admits Facebook Messages and First Two Categories of Hidden-Camera Evidence*

During the state's case-in-chief, C testified that, in one of the incidents with defendant, he had followed her into the shower and tried to have sex with her. He also had taken pictures of her breasts and "checked her hymen." During cross-examination, defense counsel asked C whether defendant had talked to her about her body and health during the incident. C testified that, "He took a picture of the mole on my breast and said, 'I'm saving this for [a] record in case it turns out to be a little more serious,' as if it was cancer or something."

A also testified at trial, and her recorded CARES interview was entered into evidence and played for the jury. In that interview, A stated that defendant had asked her in their June 2013 Facebook exchange to send him "naked photos." The state then played defendant's recorded interview with Cox and another detective in which he gave innocent explanations for requesting photographs from A. Subsequently, the state offered and the court admitted defendant's Facebook communications with A. Defendant made no new objections to the Facebook evidence beyond those that he had made at the pretrial hearing.

Once defendant's explanation of the Facebook messages was entered into evidence, the state raised the admissibility of the hidden-camera evidence and evidence that defendant had pleaded guilty to a charge involving the use of the camera for a sexual purpose. The state argued that the evidence was relevant to prove that defendant's

photography of the mole on C's breast was sexual in nature and not for the purpose of monitoring her health, as had been suggested in defendant's cross-examination of C. The state also contended that the evidence was relevant to prove the sexual purpose behind the Facebook messages with A that had been admitted.

Defendant objected that the link that the state was trying to make was too tenuous to make the evidence more probative than prejudicial. Defendant argued that the state was trying to "bootstrap inadmissible evidence onto something that is not a crime that is not charged for purposes of proving intent for yet another act, which we feel is impermissible." The court responded that the evidence was relevant because the hidden camera had captured images of other children whom defendant had told to shower in his bathroom and thus was relevant to prove the sexual purpose behind defendant's request to A to take a shower and send photos while she was in the bathroom. When discussing balancing, the court explained that the probative value of the hidden-camera evidence and defendant's guilty plea was "strong" and that defendant had admitted in his guilty plea the sexual purpose behind his use of the camera. Furthermore, defendant had vigorously attacked A's memory and use of marijuana and her ability to remember events accurately. Thus, the evidence was highly probative to the central issue whether defendant had a sexual purpose in his messages with A in which he requested photographs of her as well as whether he had a sexual purpose in photographing C's breast.

The court ruled that the state could elicit testimony from Rookhuyzen that he had found a hidden camera in defendant's bathroom that was connected to a DVR in defendant's bedroom and that "defendant has pled guilty that the camera was placed in the bathroom for the purpose of capturing sexually explicit images of a child." Before the evidence was admitted, the court gave a limiting instruction to the jury:

"You may consider how [the evidence] bears, if it has any bearing, on defendant's explanation regarding the Facebook

conversation [with A] that's contained in Exhibit No. 3 and for its bearing, if any, regarding [C]'s testimony regarding the photography of a mole on her breast. And that is the only purpose for which you may consider it."

Immediately after the evidence of the hidden camera and defendant's guilty plea was entered, the court further instructed the jury:

"And now I'm going to instruct you that you cannot use that then to make a decision that that reflects on his character. You can't. You can only use it for the purpose [that] I just told you."

## C. *Defendant's Case-in-Chief: Trial Court Admits Third Category of Hidden-Camera Evidence*

At trial, defendant sought to establish that the police had conducted an incomplete and thus inadequate investigation. To support his theory, defendant elicited testimony from Cox that she had not attempted to contact certain witnesses to whom A and B had initially disclosed that defendant had sexually abused them. To rebut that evidence, the state sought to introduce evidence that there were potential child victims from defendant's use of the hidden camera who were part of a different case and investigatory priority, which had diverted the attention and resources of the police department. Defendant objected that that evidence was highly prejudicial, and he offered to stipulate that "there were valid exigent circumstances pertaining to defendant that prevented the police from following up with the disclosure witnesses."

The court ruled the evidence that the state sought to admit was admissible, given that defendant had "opened the door" to it, and that the evidence would not cause substantially more prejudice because the jury already knew that defendant had used a hidden camera and recording device to capture images of children and had pleaded guilty to having a sexual purpose in his use of those devices. The court admitted evidence that identifying potential child victims of defendant's use of the hidden camera was a significant investigative priority related to a potential FBI investigation and charges. Also, the court admitted evidence that

not all of the potential victims from defendant's use of the hidden camera had been identified when Cox resigned from the sheriff's office in August 2014.

After the court allowed the state's limited cross-examination about potential victims of defendant's use of the hidden camera, the court gave the following limiting instruction:

> "Let me be clear, folks. The last little bit of information came in not to use for any other purpose but to explain what [Detective Cox] had time to do and didn't have time to do. So please apply [it] there and for no other purpose."

Before closing arguments and jury deliberations, the court gave the following instruction in its general instructions to the jury:

> "Limiting instruction, [hidden] camera evidence: If you find the defendant placed a [hidden bathroom] camera in his residence, you may only consider this evidence for its bearing, if any, upon defendant's explanations regarding the Facebook communication contained in Exhibit 3 and for its bearing, if any, regarding [C's] *** testimony about photographing a mole on her breast.
>
> "You may not use this evidence for the purpose of drawing the inference that because of it the defendant is likely to have committed the charged acts in this case."

The court granted defendant's motion for judgment of acquittal on Count 1, first-degree unlawful sexual penetration, at the end of the state's presentation of evidence. The jury found defendant guilty of the remaining 13 counts involving A, B, and C. Defendant appeals the judgment of conviction on those counts.

## II.   ANALYSIS

On appeal, defendant assigns error to the trial court's evidentiary rulings admitting defendant's Facebook communications with A and the three categories of hidden-camera evidence. Defendant contends that the trial court erred in assessing the relevant purposes for admitting the evidence under OEC 404(3). He also contends that the trial court failed to properly conduct OEC 403 balancing and abused its discretion in admitting the evidence.

We review a trial court's determination that other-acts evidence is relevant for nonpropensity or propensity purposes under OEC 404(3) and OEC 404(4) for legal error. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017) (*Baughman II*). We review for abuse of discretion a trial court's determination under OEC 403 as to whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice. *Id.* "In evaluating a trial court's discretionary ruling under OEC 403, our role is to assess whether the court's decision falls within the range of legally permissible choices." *State v. Gibson*, 299 Or App 582, 589, 451 P3d 259 (2019). Absent a claim that a trial court has made a legal or factual error in making a discretionary determination under OEC 403, to determine whether the court's evidentiary ruling represents an abuse of discretion, we examine whether the court "exercise[d] its discretion to an end not justified by, and clearly against, evidence and reason." *State v. Moles*, 295 Or App 606, 620, 435 P3d 782, *rev den*, 365 Or 194 (2019) (citation and internal quotation marks omitted).

In his first two assignments of error, defendant contends that the trial court erred in admitting evidence of Facebook messages between defendant and A. Defendant argues that the court admitted the evidence under OEC 404(4) and failed to consider whether the evidence's probative value was substantially outweighed by the danger of unfair prejudice under OEC 403. Alternatively, defendant contends that, if the court did the required balancing, it failed to consider the factors identified in *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), in performing that task. Either way, defendant asserts, the court committed reversible error in admitting the Facebook evidence.

The state responds that defendant's arguments under OEC 403 are unpreserved because he did not ask the court to conduct OEC 403 balancing and has not requested that we review the court's ruling for plain error. Further, even if defendant adequately preserved his objection, the trial court implicitly conducted OEC 403 balancing. *Cf. State v. Conrad*, 280 Or App 325, 331-32, 381 P3d 880 (2016), *rev den*, 360 Or 851 (2017) (implying balancing by trial court

"despite a very thin record encompassing the trial court's decision to deny defendant's OEC 403 objection," given that "the court was specifically tasked with resolving defendant's motion *in limine*, which explicitly set out the OEC 403 balancing issue"). Additionally, the state argues that defendant failed to show that the trial court abused its discretion in admitting the Facebook evidence under OEC 403, and, finally, even if the trial court erred under OEC 403, any error was harmless under principles established in *State v. Zavala*, 361 Or 377, 385, 393 P3d 230 (2017) ("In the absence of a meritorious argument that could persuade a trial court to exclude the challenged evidence, we conclude that the trial court's failure to conduct balancing under OEC 403 did not significantly affect its decision to admit that evidence. Consequently, we also conclude that there was little likelihood that the trial court's error affected its judgment of conviction.").

In a memorandum of additional authorities filed after the state filed its answering brief, defendant argues that his written motion *in limine* to exclude evidence under OEC 403 was sufficient to put the court on notice of the need to balance the probative value of the challenged evidence against its prejudicial effect. Further, he argues that he was not required to reraise the issue orally at the pretrial hearing to preserve it for appeal. Moreover, he contends that, under our decision in *State v. Anderson*, 282 Or App 24, 386 P3d 154 (2016) (*Anderson I*), *rev'd*, 363 Or 392, 423 P3d 43 (2018), the trial court's OEC 403 record was inadequate and therefore, we must reverse and remand for a new trial. *See id.* at 30 (it is a "'rare case' in which we conclude that the trial court satisfied *Mayfield* despite a 'very thin record'").

After oral argument in this case, the Supreme Court reversed our decision in *Anderson I*, concluding that the balancing by the trial court under OEC 403 in that case was adequate under *Mayfield*. *State v. Anderson*, 363 Or 392, 423 P3d 43 (2018) (*Anderson II*). The court explained that "*Mayfield* sets out the factors that trial courts should consider in resolving an OEC 403 objection, but it does not require that trial courts go through a checklist on the record in order to avoid a reversal or a remand." *Id.* at 409. Rather,

"in assessing the sufficiency of a trial court's explanation of its OEC 403 ruling, appellate courts should consider the trial court's ruling in light of the arguments that the parties made on the merits of the issues raised by an OEC 403 objection, as well as whether either party asked the court to provide a more complete explanation of its ruling." *Id.*

In *Anderson*, the central issue at trial was identification. The state sought to introduce a video recording of the defendant at his booking at the police station to establish the similarity in clothing worn by the defendant during the booking procedure and by a person in photographs taken at the crime scene. *Anderson II*, 363 Or at 406. The defendant objected to the admission of the video of the booking procedure on the ground that the evidence was unfairly prejudicial under OEC 403. *Id.* at 407. After hearing the parties' arguments on the admissibility of the video, the trial court viewed the video twice. *Id.* at 408. It then asked "the state to stop the video so that the court could examine the clothes that defendant was wearing in the video—clothes that the state reminded the court were very similar to the ones shown in the stills." *Id.* Thereafter, the court admitted the evidence over the defendant's objection, stating only that it was "relevant." In *Anderson I*, we concluded that the court's statement that the evidence was 'relevant' did not establish that the court [had] balanced the *Mayfield* factors. 282 Or App at 28. We explained that while relevancy is a threshold inquiry to admissibility, "describing evidence as 'relevant' does not suggest OEC 403 balancing, because the purpose of OEC 403 is to determine when relevant evidence should be excluded." *Id.*

The Supreme Court agreed with us that "in some cases describing evidence as 'relevant' will mean only that the evidence has a minimal tendency to prove or disprove an issue in a case." *Anderson II*, 363 Or at 408. However, the court concluded that, in the "context of the parties' arguments, the trial court's statement that the video was 'relevant' reflects its determination that the clothing was sufficiently similar to and possessed a sufficient degree of relevance on the central issue in the case to admit the video over defendant's OEC 403 objection." *Id.*

The court acknowledged that the trial court had not expressly stated its assessment of the probative value of the video or of the danger of unfair prejudice to the defendant. *Id*. at 408-09. Nor had the trial court expressly balanced those two concepts. *Id*. at 409. "However, the same could be said about the trial courts' OEC 403 rulings in [three earlier cases], all of which this court upheld because we could determine from the record that the trial court had considered and weighed those factors." *Id*.

Further, the court rejected the state's contention that the defendant had failed to preserve his argument that the trial court's findings were inadequate. *Id*. at 410. The court concluded that the defendant's failure to request that the trial court make explicit findings or consider further argument was not an issue of preservation. *Id*. Rather, the absence of a request for further explanation was a factor that bore on the sufficiency of the explanation that the trial court had given of its ruling. *Id*.

Turning to the facts here, we first address whether defendant preserved his argument that the trial court failed to conduct OEC 403 balancing and failed to apply the *Mayfield* factors in its balancing. As we explain, we conclude that defendant preserved that argument and therefore turn to whether the trial court conducted the required balancing. In resolving the balancing questions in light of *Anderson II*, we look to the context of the parties' arguments at the pretrial hearing on defendant's motion *in limine* and when the court admitted the evidence at trial.

During the first of two days of the pretrial hearing on defendant's motion *in limine*, the state cited *State v. Blanscet*, 230 Or App 363, 315 P3d 924 (2009), and *State v. Millar*, 127 Or App 76, 871 P2d 482 (1994), in support of its argument that evidence of defendant's Facebook communications with people in the Philippines and evidence found on defendant's computer and in emails was relevant and met the *Johns* test to prove intent and also the three-part *Blanscet* test to prove motive. The state explained the criteria for admissibility under each test, including the court's need to conduct OEC 403 balancing. The state went on to

argue how the evidence met all the criteria for admissibility under both tests. The court rejected the state's arguments for admissibility under OEC 404(3) theories of motive, purpose, intent, preparation, and plan. The state advanced as an alternative argument that the evidence was admissible under OEC 404(4), which it acknowledged would require OEC 403 balancing and possibly a limiting instruction.

The court ultimately was not persuaded to admit the evidence under either OEC 404(3) or OEC 404(4), but it told the parties that it wanted to review the cases cited by the state and make a final ruling on admissibility the following day. Before recessing, defendant reminded the court that there were Facebook communications with A that the state also sought to admit. The court confirmed that it was aware of the latter communications because they were part of a search warrant from August 2013, and the court told defense counsel that he would have to "come up with a creative argument" to persuade the court that the evidence was not admissible. Defense counsel acknowledged that burden.

When the parties returned for the second day of the pretrial hearing, the state asked defendant to clarify his precise objections to the Facebook communications with A. Defendant first argued that the evidence was not relevant or admissible and was propensity evidence that did not show anything other than that defendant "has a specific intent with this particular victim." The court responded that evidence of defendant's interest in a particular victim was distinct from evidence offered merely to show that defendant had a character for such conduct. The court noted that grooming behavior was specific to an individual. Defendant responded that the conduct at issue was "post-conduct" grooming behavior. Specifically, defendant argued (1) that the evidence was irrelevant because it involved conduct occurring two years *after* the conduct at issue in the last charged offense involving A; (2) that it did not establish that defendant had an ongoing sexual relationship with A; and (3) that future intent did not bear on past intent.

In response, the state cited *State v. McKay*, 309 Or 305, 787 P2d 479 (1990), and *State v. Zybach*, 308 Or 96, 775 P2d 318 (1989), as authority for admitting the evidence. In

*McKay*, the court held that other-acts evidence involving the same victim was admissible to "demonstrate the sexual predisposition this defendant had for this particular victim." 309 Or at 308. In *Zybach*, the issue was "whether evidence of encounters with a child victim by an adult defendant after an alleged rape occurred was admissible." 308 Or at 98. The Supreme Court held that the *Zybach* evidence was admissible on two grounds: (1) "it was relevant to show why the child had not reported the original sexual assault," and (2) the defendant's statement to the victim approximately two weeks after the alleged rape "that he wanted to make love to the girl *again* constituted an admission that he had done so before." *Id.* at 100 (emphasis in original). Here, the trial court agreed with the state that, under *Zybach*, the Facebook evidence appeared to be admissible.

Defendant's counsel said that he understood the court's view of *Zybach* but sought to distinguish *Zybach* by focusing on the "ongoing" nature of the relationship between the defendant and the victim in *Zybach* and the short length of time between the incidents in that case. The court rejected counsel's analysis of *Zybach* and ruled that the Facebook evidence was admissible, observing that it was "very similar" to the evidence that the *Zybach* court had held to be relevant and admissible. The court explained that, like the evidence in *Zybach*, the Facebook evidence constituted defendant's admission of past misconduct. The Facebook exchanges between A and defendant showed their mutual acknowledgement of the creation of prior sexually related photographs of A similar to the new photographs that defendant had asked A to create for him.

Upon hearing the court's explanation, defense counsel offered no further argument on the matter, stating, "I understand the court's ruling." Defendant did not argue that the evidence was overly prejudicial under OEC 403 or that it was being offered only to prove that defendant was a bad man—as counsel had argued the day before regarding the other categories of other-acts evidence. Further, when the Facebook evidence subsequently was offered and admitted at trial, defense counsel stated that he had no objection to the evidence beyond his "previously-voiced objections."

We conclude that, as in *Anderson II*, defendant's request for OEC 403 balancing in his motion *in limine* preserved his argument on appeal. We further conclude, for the reasons explained below, that the trial court's OEC 403 balancing was adequate under *Anderson II*.

To begin, the trial court was aware of its need to conduct balancing under OEC 403, not only because of defendant's request in his motion *in limine* but also because the state had reminded the court at the pretrial hearing of its need to do that. There is nothing in the record to indicate that the trial court rejected or ignored that requirement before admitting the evidence. Further, despite defendant's argument otherwise, the record amply establishes that the court and parties agreed that the Facebook exchange between defendant and A addressed a central issue in the case, *viz.*, whether defendant had previously sought sexually related photographs from A, and therefore had high probative value. Indeed, after the evidence was admitted at trial, defense counsel told the court that he might request a limiting instruction because the Facebook messages with A were some of the "strongest" evidence that the state had offered.

Ultimately, the trial court's lack of express balancing under *Mayfield* after it determined that the Facebook evidence was admissible under *Zybach* was not indicative of a failure to balance but, rather, was indicative of defendant's failure to offer any meritorious argument as to why the highly probative evidence should be excluded despite its relevance under OEC 404(3).

In this case, similar to the trial court's conclusion that the evidence was "relevant" in *Anderson II*, the court's ultimate ruling that the evidence was "admissible" was shorthand for its belief that the evidence was not only relevant under *Zybach* but also that the probative value substantially outweighed any risk of unfair prejudice to defendant under OEC 403. To conclude, given defendant's lack of request for further explanation from the court, the court's OEC 403 balancing was adequate despite lack of an express statement by the court that it had balanced the probative value of the evidence against the risk of unfair prejudice to defendant.

The next question is whether, under *Mayfield*, the trial court acted within its discretion when it admitted the evidence over defendant's OEC 403 objection.[6] When a trial court is presented with a request to exclude evidence as unfairly prejudicial under OEC 403, the court should (1) consider the quantum of probative value of the evidence and consider the weight or strength of the evidence; (2) determine how prejudicial the evidence is and the extent to which the evidence may distract the jury from the central question whether the defendant committed the charged crime; (3) balance the prosecution's need for the evidence against the countervailing danger of unfair prejudice; and (4) consider whether to admit all the proponent's evidence, none, or some portion of it. *Anderson II* at 409 (clarifying that the *Mayfield* factors are not a checklist through which a court must work).

The quantum of probative value of evidence refers to "the strength of the relationship between the proffered evidence and the proposition sought to be proved." *State v. Sewell*, 257 Or App 462, 469, 307 P3d 464, *rev den*, 354 Or 389 (2013) (citations and internal quotation marks omitted). In determining whether evidence is unfairly prejudicial, the critical inquiry "is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." *Id*.

Here, the evidence was probative of a central issue in the case—whether defendant had previously sought sexually related photographs from A. Also, the evidence was unlikely to distract the jury from the central question, given that the evidence went directly to defendant's intent and past relationship with A. Additionally, the state's need for the evidence was significant, given that its case rested on the credibility of the victims' testimony against defendant.

---

[6] On appeal, defendant claims that the court admitted the evidence under OEC 404(4) for propensity purposes. However, the court concluded that, under *Zybach*, the evidence was admissible for a nonpropensity purpose under OEC 404(3). Unlike defendant's third and fourth assignments of error, defendant does not contend in this assignment that the evidence was irrelevant. Rather, defendant's argument is that the court did not conduct balancing and, if it did, that it did not apply the factors identified in *Mayfield*.

Further, although prejudicial, the evidence was less inflammatory than much of the other evidence of sexual misconduct by defendant. Finally, given that the evidence was defendant's own admission in his Facebook communications, the evidence was one of the strongest pieces of evidence to resolve whether defendant had a sexual purpose in his interactions with A.

By contrast, defendant's argument in his motion *in limine* was generically focused on all eleven categories of other-acts evidence as "mere propensity evidence" that was inflammatory, unduly confusing, and likely to mislead the jury. However, defendant did not make any specific arguments about why the probative value of the Facebook evidence involving A was outweighed by any specific prejudice of that evidence to defendant. Indeed, once the trial court ruled that the evidence was admissible under *Zybach*, defendant made no further argument as to the prejudice that he would suffer from it.

On appeal, defendant expands on his cursory arguments from trial. First, defendant notes that the messages were the primary evidence that did not come from A, B, and C or their interviewers. Instead, "the messages were defendant's words from defendant's Facebook account" and "formed a principal topic in the police officers' interrogation of defendant." For those reasons, defendant argues that it would be difficult for the jury to separate the relevant purpose—to explain A's delayed report—from the impermissible inference that defendant is a "predator" deserving punishment. Second, he argues that there was a likely risk that the jury would abdicate its duty to look at the evidence of each charge and instead "convict defendant based on his desire to solicit naked photographs from A."

Defendant is mistaken that the trial court admitted the Facebook evidence solely to explain A's delayed reporting. In fact, the court admitted the evidence to show defendant's sexual predisposition toward A, to explain A's delayed reporting, and as an admission by defendant of past sexually related conduct. Because of defendant's mistaken assumption about the purposes for which the court admitted the evidence, he failed to address the probative value of the

evidence and how the prejudicial effect to him substantially outweighed that value.

Ultimately, the evidence was not misleading, cumulative, or irrelevant. It was the opposite: The evidence was central to the state's theory, relevant for multiple purposes, not cumulative, and unique as defendant's own admission. The court did not abuse its discretion under OEC 403 in admitting the Facebook evidence.

Next, in his third, fourth and fifth assignments of error, defendant combines his argument that the trial court erred when it admitted the three categories of hidden-camera evidence. Defendant contends that the first two categories of that evidence were irrelevant for the purposes for which the court admitted the evidence, and, therefore, under *Baughman*, we must reverse and remand for a new trial. *State v. Baughman*, 276 Or App 754, 369 P3d 423 (2016) (*Baughman I*), *aff'd*, 361 Or 386, 393 P3d 1132 (2017). Alternatively, defendant contends that all three categories of evidence, as a whole, were substantially more prejudicial than probative. Thus, the trial court abused its discretion in admitting all three categories of hidden-camera evidence. As we explain below, the court did not err in admitting any of the hidden-camera evidence.

After briefing and oral argument in this case, the Supreme Court decided *Baughman II*, which affirmed our decision in *Baughman I* but clarified the two-step analysis to be used "when a party objects to the admission of other acts evidence." *Baughman II*, 361 Or at 404. First, a trial court should determine whether the proffered evidence is relevant for one or more nonpropensity purposes under OEC 404(3). *Id.* "If it is, then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403." *Id.* "If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403." *Id.*

If a trial court determines that the evidence is not relevant under OEC 404(3), then it must determine whether

the evidence is otherwise relevant under OEC 404(4) and admissible under OEC 403. *Id*. at 404-05. The decision at step one about whether evidence is relevant for a nonpropensity purpose or is relevant only for a propensity purpose will have a significant effect on whether the court admits the evidence at step two when the court conducts OEC 403 balancing. *Id*. at 405.

When evidence is relevant under OEC 404(3) for a nonpropensity purpose, the evidence generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that substantially outweighs the probative value of the evidence. *State v. Williams*, 357 Or 1, 19, 346 P3d 455 (2015). However, when other-acts evidence is offered and admitted under OEC 404(4) and only to prove defendant's character, it generally will be inadmissible because the low probative value of the evidence will be substantially outweighed by the prejudice to the defendant. *Id*. at 20. Ultimately, the court concluded in *Baughman II* that an error in assessing the purposes for admitting evidence significantly affects the trial court's decision under OEC 403 and requires reversal and remand for the trial court to determine anew whether the other-acts evidence was relevant and whether its probative value substantially outweighed the danger of unfair prejudice. 361 Or at 410-11.

Turning to the facts here, the court admitted the three categories of hidden-camera evidence at different stages in the trial. The first two categories of hidden-camera evidence were admitted in the state's case-in-chief. The court admitted evidence that the police had discovered a hidden camera in defendant's shower that was attached to a recording device in defendant's bedroom and evidence that defendant had pleaded guilty to allegations that he had placed the hidden camera in the bathroom for the purpose of capturing sexually related images of a child. The state offered the evidence as relevant to prove the use of a child in a display of sexually explicit conduct (Counts 4 and 11-12) involving A and C. Specifically, that state offered the evidence to rebut defendant's claims that his Facebook messages with A were "innocent" and that his reasons for requesting new photographs of A were nonsexual. The evidence was also offered to rebut defendant's claim that his photographing of C's breast

was health related and nonsexual. The trial court admitted the two categories of hidden-camera evidence for two purposes: (1) to prove that defendant had acted with a sexual purpose when he sent Facebook messages to A requesting new photographs of her and (2) to prove that defendant had acted with a sexual purpose when he photographed C's mole on her breast.

On appeal, defendant contends that the evidence was irrelevant for either of those purposes and, therefore, that the trial court improperly assessed the probative value of the evidence under OEC 403. First, defendant argues that whether he had a sexual purpose in requesting in his Facebook messages with A that A provide him with new photographs of her was irrelevant as a matter of law because he was not charged with a crime related to that request in the Facebook messages and, in his view, the Facebook messages were admitted *only* to explain the reason for A's delayed disclosure of sexual abuse by defendant. Thus, defendant argues that the fact that he may have acted with a sexual purpose when he installed the hidden camera in his shower does not explain A's reasons for failing to immediately report the abuse by defendant. Defendant contends, therefore, that, because one of the trial court's bases for admitting the hidden-camera evidence is flawed, the trial court's OEC 403 balancing was flawed.

Defendant is mistaken that the trial court admitted the Facebook messages with A to explain only her delayed disclosure of abuse. Because of that mistake, defendant fails to address the other grounds on which the trial court admitted evidence of defendant's Facebook messages with A. As explained earlier, the trial court concluded that that evidence was admissible under OEC 404(3) as evidence of defendant's sexual predisposition toward A and that he had previously requested sexually related photographs of A. Given our earlier conclusion that the trial court did not err in admitting the Facebook evidence on the bases on which it admitted that evidence, defendant's first argument fails.

In his second argument, defendant contends that whether he acted with a sexual purpose when he photographed the mole on C's breast was irrelevant to proving the

crime of use of a child in a display of sexually explicit conduct under ORS 163.670. To obtain a conviction under ORS 163.670, the state must prove that "the photographs were taken with the intention of arousing the sexual desire of people who view them." *State v. Mross*, 274 Or App 302, 306, 360 P3d 670, *rev den*, 358 Or 550 (2015). Therefore, defendant argues that the only relevant question was whether he took the photographs with the intention of arousing the sexual desire of a viewer of the photographs, not whether he personally had a sexual purpose when he installed the camera to produce the photographs. Defendant's argument is unpreserved, and he does not request plain-error review. Hence, we decline to address his unpreserved argument.

Defendant does not raise any other argument against the trial court's determination that the first two categories of hidden-camera evidence were relevant for the purposes for which the court admitted them. We conclude that the trial court did not err in admitting the first two categories of hidden-camera evidence as relevant to prove defendant's sexual purpose in seeking the photographs from A that he did in his Facebook messages with A and his photographing of C's breast.

Next, for the reasons that follow, we conclude that the record shows that the court properly exercised its discretion when it admitted the evidence. Here, the evidence was highly probative of whether defendant had a sexual purpose in committing the charged acts. The court explicitly stated that the prejudice to defendant did not substantially outweigh the probative value of the evidence "in light of the vigorous attacks on the memory of the children and—and the innocent explanations that were tendered" by defendant. Further, the trial court gave limiting instructions before and after the first two categories of hidden-camera evidence were offered and at the close of the trial. *See State v. Brown*, 272 Or App 424, 432-33, 355 P3d 216, *rev den*, 358 Or 145 (2015) (explaining that danger of prejudice from "other acts" evidence can be mitigated by the use of proper jury instructions). Accordingly, the court did not err in making a factual or legal determination under OEC 403. Further, the court's decision was within the range of legally permissible

action, and, therefore, the court did not abuse its discretion in admitting the first two categories of hidden-camera evidence.

We turn to defendant's final evidentiary argument, *viz.*, that the trial court erred in admitting the third category of hidden-camera evidence in response to testimony elicited by defendant during his cross-examination of Cox. The state sought to introduce evidence that defendant's use of the hidden camera was the subject of a potential FBI investigation involving potential child victims and that identification of those victims was a significant investigative priority that diverted resources away from the investigation in A, B, and C's case. The state also sought to admit evidence that, by the time that Cox had left the sheriff's office in August 2014, not all of the potential victims from defendant's use of the hidden camera had been identified. Defendant objected to admission of that evidence and offered to stipulate that "there were valid exigent circumstances pertaining to [defendant] that prevented the police from following up with the disclosure witnesses." The state responded that defendant's proffered stipulation did not adequately address the state's need to explain the reasons for the investigative deficiencies.

In the court's discussion of its OEC 403 balancing, the court noted that defendant had repeatedly attacked Cox and the police department at trial for their investigation's deficiencies and the fact that they had not followed up on interviewing certain witnesses. Given the nature and breadth of the attack, defendant had opened the door for the state to explain the reasons for the investigative deficiencies. Further, the court concluded that, given that evidence of the hidden camera and defendant's guilty plea had already been admitted in the state's case-in-chief, the prejudice to defendant from the additional hidden-camera evidence did not substantially outweigh the probative value of the evidence. Thus, the court ruled that that evidence was admissible for the narrow purpose of establishing what Cox had had time to do in the investigation.

On appeal, defendant contends that his proposed stipulation divested the state's evidence of "much of its

probative value" and cites *State v. Zimmerlee*, 261 Or 49, 492 P2d 795 (1972), in support of his argument. *See id.* at 54 ("Once defendant offered to stipulate that he had possession of the gun subsequent to the alleged robbery, the only purpose that would be served by permitting the state to prove the subsequent crime would be to show that because defendant had committed another crime he was a bad man and therefore probably committed the crime for which he was charged."). Defendant makes no further argument and fails to explain why *Zimmerlee* would require the trial court to admit defendant's proposed stipulation over the state's requested offer of proof.

First, unlike the defendant's proposed stipulation in *Zimmerlee*, defendant's stipulation here did not supplant the probative value of the state's evidence. Specifically, the state sought to rebut defendant's repeated attacks on the investigative deficiencies, which required a more developed explanation beyond defendant's stipulation. Second, the prejudicial effect of the state's evidence in *Zimmerlee* was significant, and the stipulation prevented other-acts evidence from being admitted altogether. In contrast here, the jury already had information that defendant had pleaded guilty to charges based on images from the hidden camera; thus, the jury was already aware of defendant's use of the hidden camera. Given those facts, the state was not required to accept defendant's stipulation.

Finally, defendant argues that all three categories of hidden-camera evidence combined to create substantially more prejudice than each category individually and thereby outweighed the probative value of the evidence. However, the three categories of hidden-camera evidence were not admitted at the same time. Rather, the first two categories were admitted in the state's case-in-chief. And, as previously discussed, the court did not abuse its discretion in admitting that evidence. At the time of the admission of the third category of hidden-camera evidence, the prejudice to defendant from the hidden-camera evidence, considered in the light of all of the evidence admitted to that point, did not substantially outweigh the probative value of the evidence to the state. Further, the court gave a limiting instruction before

admission of the third category of hidden-camera evidence, as it had for the other hidden-camera evidence, to limit the jury's consideration of the evidence to the narrow purpose for which the court admitted it.

In summary, the trial court did not err in determining that the three categories of evidence related to the hidden cameras were relevant under OEC 404(3) and admissible under OEC 403.

In his seventh through ninth assignments of error, defendant contends that the trial court erred by imposing compensatory fines of $34,940.82 in favor of B and C and a compensatory fine of $69,881.63 in favor of A. Specifically, at trial, defendant objected to the *amount* of the requested compensatory fines. Whether a trial court erred in imposing a compensatory fine is a legal question. *State v. Garlitz*, 287 Or App 372, 374, 404 P3d 1090 (2017).

At sentencing, the state and the victims' attorneys for A and B requested restitution and compensatory fines for A and B. They filed memoranda in support of their requests that outlined the legal and factual bases for the court to impose the amounts requested: $10,000 in restitution and $140,000 in compensatory fines.

At the hearing on restitution, compensatory fines, and security reinstatement and remission, A and B asked the court to award restitution on their behalf for their CARES medical evaluations and to order defendant to pay compensatory fines to them totaling $140,000.[7] In order to find defendant to be able to pay the compensatory fines, A and B asked the court to reinstate the remaining $150,000 in security posted by defendant and to apply the reinstated security to the requested restitution and compensatory fines.

Defendant stipulated to restitution awards of $10,000, which included restitution for the cost of the CARES examinations of A and B. However, he objected to the amount of the compensatory fines requested by the victims:

---

[7] Only A and B were represented by counsel. C did not appear at the sentencing hearing and did not request any restitution or compensatory-fine award.

"[DEFENSE COUNSEL]:   *** [W]e do agree with a restitution amount of approximately $10,000 that's set forth on Exhibits A. We did stipulate to that.

"I—I disagree with [A's attorney], in stipulating to that, that we essentially stipulated to the Court's—or acquiesce to the Court's ability to impose a compensatory fine. Here's our problem with what the complainant witnesses [A and B] are asking for in this case, Your Honor.

"Is—they are just essentially taking a stab at a blank number in the air and asking the Court to assume that they're going to have that much in damages in the future, which would be $70,000, approximately, per victim in this case.

"I don't think there's been any evidence put forward that— from which the Court could assume that, at some point in time, *their damages will be that amount.*

"Certainly, they don't have restitution in that amount. And I don't think the compensatory fine in that amount is proper."

(Emphasis added.)

Defense counsel went on to discuss how the court should dispose of the forfeited money and amounts payable for legal fees. Later, when given another opportunity to make any further argument before the court ruled, defense counsel stated that

"And I'd just like to reiterate that it's our position that the victims in this case have not put forth sufficient proof as to what their damages are or could be moving forward for the Court to award a compensatory fine *in the amount* being requested. And that's all I have, Your Honor."

(Emphasis added.)

Thereafter, the court ruled from the bench and awarded restitution in the amount stipulated by the parties and ordered that that amount be deducted from defendant's forfeited bail. The court then ordered that "50 percent of the remaining funds be placed as a compensatory fine to [A], and that 25 percent should be compensatory fines that are assigned to [B] and [C]." The court explained that the "abuse [A] suffered was substantially greater than the other two. It doesn't lessen or make light of the abuse that [C] and [B]

suffered, but [A's] was greater and so it reflects that it will take more to address that." Further, the court opined that

"just as the other two, it's taken some time for this to— to trickle to the surface. [C] is no different in that regard. And it is absolutely expected that she will have to deal with these issues, front and [center]. And she's dealing with it to a certain degree, but there's absolutely—compensatory fine is warranted on her behalf as well."

The trial court also found that,

"given the jury's findings and the convictions, * * * each girl now has an absolute[ly] viable civil suit that is available to them against [defendant]. And each, should they [bring] it, would be able to claim damages at levels that utterly dwarf the amounts that are available as a compensatory fine. I do not find that the amount of compensatory fine that I ordered will do an adequate job to rectify the wrong that is done, only that it gives a place to start."

After the court's ruling, the court proceeded to instruct the parties on how they should calculate the final money award when they presented their proposed final judgment. Next, when asked by A's counsel to clarify the ruling ordering the compensatory fines to the victims, the trial court agreed that it was imposing the statutory fine and ordering that fine to be paid to the victims as a compensatory fine because there was a factual predicate for it. The court further explained, "I would also find, even if that weren't the case, that there is clear evidence that [A, B, and C] are suffering economic harm because [] two of them are actively involved in counseling and have been. And I'm absolutely convinced that [C] is in the same circumstances." Subsequently, the sentencing judgment contained a money award that included the stipulated restitution, as well as compensatory fines of $69,881.63 to A, $34,940.82 to B, and $34,940.82 to C.

On appeal, defendant contends that the trial court erred by imposing the compensatory fines that it did. Specifically, defendant argues that the state failed to establish that the victims necessarily incurred the amounts of the compensatory fines awarded in this case for future counseling costs because the record did not establish that any of

the victims had scheduled counseling sessions or the cost of those sessions.

The state responds that defendant's argument at sentencing was not that the victims had failed to submit sufficient evidence of damages to permit a compensatory fine in some amount. Rather, defendant challenged the sufficiency of evidence to warrant a compensatory fine of the requested amount of $140,000. The state contends that, insofar as defendant is now making the former argument, that argument is unpreserved and should not be considered. And to the extent that he is making the latter argument—the one that he presented below—we should reject that argument because a compensatory fine does not require proof of objectively verifiable monetary losses in the amount of the fine. Additionally, defendant does not request that we review for plain error.

As we explain below, we agree with the state that defendant's argument at trial was focused solely on the amount of the compensatory fines. Defendant did not dispute the victims' attorney's contention that the restitution stipulation provided the factual predicate for the trial court to award compensatory fines to A and B. Further, when the court made multiple findings regarding the victims' ability to recover damages against defendant in a civil action and that they had incurred economic damages—defendant did not contest that. Ultimately, defendant did not contend that the victims had failed to prove that they had suffered *any* economic damages as the result of his criminal conduct and that, thus, there was *no basis* for the imposition of a compensatory fine. Rather, he challenged only the sufficiency of their proof to support a compensatory fine in the requested amount related to future, indeterminate costs of counseling.

We conclude that defendant's argument that the state failed to offer *any* evidence that the victims had objectively verifiable monetary losses that had been incurred by them is unpreserved and is qualitatively different from the arguments that he made below, and we decline to address it. *Miller v. C.C. Meisel Co., Inc.*, 183 Or App 148, 172, 51 P3d 650 (2002) (given the requirements in ORAP 5.45(4)(a) and the policies underlying the rule, the court declined to review

issues on appeal that were qualitatively different from the issues raised below).

We turn to defendant's argument at trial that a compensatory fine requires proof of economic damages *in the amount* of the fine. Under ORS 161.625, a sentencing court is authorized to impose a fine against a defendant as a penalty for the commission of most felonies, including the felonies for which defendant was convicted. *See Garlitz*, 287 Or App at 376. Under ORS 137.101, a sentencing court is authorized "to direct that some or all of that fine money under ORS 161.625 be used to compensate the victims of the defendant's crimes if those victims have suffered damages for which they would have a civil action against the defendant as a result of those crimes." *Id.* (citation omitted). Nothing in the statute ties "the amount of the compensatory fine to the amount of economic damages that a victim has suffered." *State v. Grismore*, 283 Or App 71, 76, 388 P3d 1144 (2016).

Here, the court was authorized to impose a statutory fine up to the amount authorized by ORS 161.625 for defendant's 13 felony convictions. Because we have rejected as unpreserved defendant's argument that the state failed to establish the factual predicate for the court to award compensatory fines in *some* amount to A, B, and C, it follows that the trial court had authority to order compensatory fines to them in any amount less than or equal to the amount of the applicable statutory fines. Thus, under ORS 137.101, the court was authorized "to direct that some or all of those monies be paid to the victims of defendant's offenses without determining the precise value of damages caused by defendant's conduct." *Garlitz*, 287 Or App at 378. We conclude that the trial court did not err in imposing compensatory fines in the amounts awarded to A, B, and C.

Affirmed.